UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                 :

ZURICH AMERICAN INSURANCE COMPANY, et al., :
                                 :

                Plaintiffs,   :
                                 :

        -v-                     :

XL INSURANCE AMERICA, INC.,          :
                                 :

               Defendant.   :
                                 :

------------------------------------------------------------------X

20-cv-4614 (LJL)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__08/16/2021__

LEWIS J. LIMAN, United States District Judge:

On July 7, 2021, this Court issued an Opinion and Order granting in part and denying in part the parties' cross-motions for summary judgment. *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 2021 WL 2856521 (S.D.N.Y. July 7, 2021); Dkt. No. 44. Plaintiff Zurich American Insurance Company ("Zurich" or "Plaintiff") now moves for reconsideration of the Opinion pursuant to S.D.N.Y. Local Civil Rule 6.3. Dkt. No. 46.

For the following reasons, the motion for reconsideration is denied, but the Court's prior opinion is corrected.

## BACKGROUND

Familiarity with the Court's prior opinion granting in part and denying in part the parties' cross-motions for summary judgment, Dkt. No. 44, is assumed. Zurich's motion for reconsideration relates to two holdings: (1) the Court's holding that primary coverage under the XL Primary Policy is capped at $1 million, *id.* at 38, and (2) the Court's holding that XL's Excess Policy is not primary to Zurich's Primary Policy, *id.*

In brief, this case is about insurance coverage for state court litigation relating to a personal injury at a construction site. The injured party was employed by D.A. Collins

Construction Co., Inc. ("D.A. Collins"), which was under contract with the City.  D.A. Collins, in turn, subcontracted with Hayward Baker, Inc. ("HBI").

The injured party filed a lawsuit against the City in New York State Supreme Court, Orange County (the "State Court Action").  On September 4, 2020, the City impleaded HBI to assert against it causes of action for common law and contractual indemnification and contribution.  The State Court Action is ongoing.

Plaintiff Zurich insures D.A. Collins under a commercial general liability policy, Dkt. No. 25-9, and a commercial umbrella liability policy, Dkt. No. 25-10.  Zurich agreed to defend the City in the State Court Action as an additional insured under its primary policy and umbrella policy up to a total limit of liability of $6 million.  Dkt. No. 28 ¶ 46; Dkt. No. 25-11.

Defendant XL insures HBI under a commercial general liability policy, Dkt. No. 21-3, and an excess liability policy, Dkt. No. 21-4, both issued to Keller Foundations, LLC ("Keller"), the parent company of HBI.  The City is an additional insured under both policies, subject to the occurrence of certain conditions.

This dispute involves a wide variety of insurance policies.  Four are relevant here.

### A.    XL Primary Policy

XL issued a commercial general liability policy to HBI's parent Keller for the policy period from July 1, 2019 to June 1, 2020, with limits of $2,500,000 per occurrence and in the aggregate, subject to a $650,000 deductible (the "XL Primary Policy").  *See* Dkt. No. 21-3.  HBI is a named insured on the XL Primary Policy.  *Id.*

The policy contains dozens of additional insured endorsement forms, all produced by the Insurance Services Office ("ISO").  One form is relevant here.  The CG 20 10 04 13 Forms address liability "caused, in whole or in part," by HBI and relates to the ongoing operations of HBI.  Several versions of this form appear throughout the XL Primary Policy, with minor

differences between them.  Three provisions of this form are relevant to the question whether

XL's primary coverage is capped at $1 million.  First, the "Broader" Clause provides:

> If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured *will not be broader* than that which you are required by the contract or agreement to provide for such additional insured.

("Broader" Clause), XL Primary Policy, CG 20 10 04 13, A – Who Is An Insured.  This

provision appears in both the CG 04 13 endorsement at pages 63-64 of the XL Primary Policy

and the CG 04 13 endorsement at pages 99-100 of the Policy.

Second, the "Limits" Clause provides:

> We will not provide Limits of Insurance to any additional insured person or organization that exceeds the lower of:
> (a) The Limits of Insurance provided to you in this policy;
> (b) The Limits of Insurance you are required to provide in the written contract or written agreement.

("Limits" Clause), XL Primary Policy, CG 20 10 04 13, Schedule.  This provision appears in the

CG 04 13 endorsement at pages 99-100 of the XL Primary Policy, but not in the CG 04 13

endorsement at pages 63-64 of the Policy.

Third, the "Most We Will Pay" Clause provides:

> If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:
> 1.  Required by the contract or agreement; or
> 2.  Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

("Most We Will Pay" Clause), XL Primary Policy, CG 20 10 04 13, C – Limits of Insurance.

This provision appears in both the CG 04 13 endorsement at pages 63-64 of the XL Primary

Policy and the CG 04 13 endorsement at pages 99-100 of the Policy.

3

**B.      XL Excess Policy**

XL issued to Keller an excess liability policy for the period from July 1, 2019 to June 1,

2020 with limits of $5,000,000 per each occurrence and in the aggregate ("XL Excess Policy"),

which identifies the XL Primary Policy as the "controlling underlying policy."  Dkt. No. 21-4 at

11-12.  The XL Excess Policy "follows form" to the XL Primary Policy, which is a term of art in

insurance that means, unless otherwise specified, that the same provisions in the XL Primary

Policy apply to the XL Excess policy.  Dkt. No. 21 at 5.[1]

The XL Excess Policy includes a "Primary Insurance Clause Endorsement," which

provides:

> It is agreed that to the extent that insurance is afforded to any Additional Insured
> under this policy, this insurance shall apply as primary and not contributing with
> any insurance carried by such Additional Insured, as required by:
>    (a) specifically required by written contract or agreement;
>    (b) required to meet the obligations of a contract or agreement.
> All other terms and conditions of this policy remain unchanged.

*Id.* at 31.

**C.      HBI Subcontract**

D.A. Collins and HBI entered into a subcontract agreement, dated September 17, 2018,

that requires HBI to name D.A. Collins and the City as additional insureds under its commercial

general liability and excess liability policies on a primary, non-contributory basis (the "HBI

Subcontract").  Dkt. No. 21-2.

The HBI Subcontract sets limits on insurance coverage under that agreement.  It provides

that Commercial General Liability Insurance coverage "shall be written on an ISO occurrence

form . . . in an amount of $1,000,000 per occurrence and $2,000,000 aggregate."  Dkt. No. 21-2

---

[1] The XL Excess Policy states that the policy "follows form" to the "terms, conditions,
definitions, limitations and exclusions of the [XL Primary Policy] . . . unless they are
inconsistent with the provisions of this policy."  Dkt. No. 21-4 at 16.

at Ex. C ("Insurance Requirements") ¶ B.2.  It further provides that the "required limits for the umbrella/excess coverage shall be sufficient to provide a total of $5,000,000 per occurrence/aggregate."  *Id.* ¶ B.4.

### D.    Zurich Primary Policy

Zurich issued to D.A. Collins a commercial general liability policy for the policy period from January 1, 2019 to January 1, 2020 with limits of $2,000,000 per occurrence and $4,000,000 in the aggregate (the "Zurich Primary Policy").  Dkt. No. 25-9; Dkt. No. 28 ¶ 43.

## LEGAL STANDARD

A motion for reconsideration should be granted only if the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).  Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted).  It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## DISCUSSION

## I.    Primary Coverage Under the XL Primary Policy is Capped at $1 Million

Throughout this litigation, both XL and Zurich have adopted varying positions as to which provision dictates the limits of insurance coverage to additional insureds under the XL Primary Policy.

In XL's brief in support of its motion for summary judgment, XL argued that the "Broader" Clause limits its indemnity obligation to the "lesser of (a) the policy limit, or (b) the limit required by the Subcontract." Dkt. No. 21 at 20. Zurich responded that "[t]his language . . . has nothing to do with the limits of liability," and that the "Limits" Clause controls. Dkt. No. 31 at 15.[2] Zurich then stated that "[t]he limits clause reduces the insurance afforded by XL to the amount required by the Subcontract," and that "[t]he Subcontract required HBI to procure a minimum of $6 million in coverage to the City through a commercial general liability policy providing $1,000,000 per occurrence and an umbrella policy providing a minimum of $5,000,000 per occurrence." *Id.* at 16. Zurich argued that, despite this, "the Court should compel XL to provide the amount of insurance HBI contracted to provide ($6,000,000) and which XL agreed to provide, by declaring that XL must indemnify the City up to $2,500,000 under the Primary Policy and up to $3,500,000 under the Excess Policy," because applying the $1,000,000 limit on primary insurance would create problems as to when (and if) the Excess Insurance policy is triggered. *Id.* at 19. XL's reply did not specifically articulate which clause it relied on to support its argument, but it cited Zurich's position that "the XL Primary Policy provides that AI coverage will be the lesser of (a) the policy limit, or (b) the limit required by the Subcontract," indicating a departure from its earlier argument based on the "Broader" Clause and an acceptance of Zurich's position that the "Limits" Clause controls. Dkt. No. 38 at 9. At oral argument, XL explicitly relied on the "Limits" Clause. Dkt. No. 42 at 26-27.

---

[2] Zurich asserts, in its brief in support of its Motion for Reconsideration, that "Zurich opposed this argument by asserting . . . that the Broader Clause relates to the scope of coverage, not the limits." Dkt. No. 47 at 2 (citing Dkt. No. 31 at 19). The Court notes that this argument, and the accompanying reference to *Charter Oak*, is not articulated anywhere in Zurich's summary judgment briefing and is advanced for the first time here.

The Court relied on the "Broader" Clause to hold that "primary coverage under the XL Primary Policy is capped at $1 million." Dkt. No. 44 at 38.

In Zurich's motion for reconsideration, it once again argues that the "Broader" Clause is not applicable, and notes—for the first time—that this Court has previously interpreted this language as defining the *scope* of coverage and not the *amount* of coverage. Dkt. No. 47 at 2. In this motion, however, Zurich now argues that "the language explicitly addressing the amount of coverage XL was required to provide to the City" is the "Most We Will Pay" Clause, shifting from its earlier position that the "Limits" Clause controls. *Id.* Zurich argues that language like "the limit will not be higher"—which is virtually identical to the language it argued was controlling in its summary judgment briefing—"does not exist" here, and that if it that phrase "had . . . been included instead of the language XL actually used, XL may have a reasonable argument that its primary policy is limited to $1 million." *Id.* Zurich interprets the "Most We Will Pay" Clause to set the maximum amount of *total* coverage under both primary and excess coverage, arguing that it "simply sets the most XL will pay and the contract required coverage up to $6 million," and that the "$6 million cap exceeds the XL Primary Policy limit and thus there is no basis for XL to reduce its primary limit from $2.5 million to $1 million." *Id.* at 3. In XL's response to Zurich's motion for reconsideration, XL does not attempt to defend its initial argument, and the argument adopted by the Court, that the "Broader" Clause controls. Rather, XL again points to the "Limits" Clause, and argues that it supports the conclusion that the XL Primary Policy should be capped at $1 million. Dkt. No. 48 at 2. Zurich's reply criticizes "XL's shifting arguments," and then argues that the "Most We Will Pay" Clause controls, rather than the "Limits" Clause that it originally pointed to as controlling in its summary judgment briefing. Dkt. No. 49 at 2. Zurich's reply strongly emphasizes what it calls the "inconsistent provisions"

in the additional insured endorsement, i.e., the "Limits" Clause and the "Most We Will Pay" Clause, saying that "XL does not reconcile these clauses because they cannot be reconciled." *Id.* at 3. Zurich also points out that both of these clauses appear in the CG 04 13 additional insured endorsement at pages 100-101 of the XL Primary Policy, but that only the "Most We Will Pay" Clause appears in the version of the CG 04 13 additional insured endorsement at pages 64-65 of the same XL Primary Policy. *Id.* Zurich does not attempt to offer an explanation as to why the multiple versions exist, why the "Limits" Clause is included in one version but not the other, or which version should be controlling.

The Court erred in relying on the "Broader" Clause to determine the limits of insurance coverage afforded under the XL Primary Policy to additional insureds. The "Broader" Clause limits only the *scope* of insurance coverage and does not dictate the limits on the *amount* of that coverage. The reference to the "Broader" Clause did not support the Court's order and was in error.

However, both the "Limits" Clause, which XL and Zurich have identified as controlling, and the "Most We Will Pay" Clause, which Zurich relies on in its briefing on this motion, dictate the identical result and support the Court's conclusion. The Court's prior opinion should be read with this opinion to understand the Court's reasoning.

Both the "Limits" Clause and the "Most We Will Pay" Clause limit the *amount* of insurance coverage to the lesser of the amount provided in the XL Primary Policy ($2,500,000) or the amount provided in the additional insured contract or agreement. Here, that lesser amount provided in an additional insured contract or agreement is $1,000,000, the figure referenced in the Court's opinion. The HBI Subcontract explicitly limits HBI's obligation to obtaining Commercial General Liability Insurance coverage in an amount of $1,000,000 per occurrence

and $2,000,000 aggregate on an ISO occurrence form.  Dkt. No. 21-2, Ex. C ¶ B.2 ("Insurance Requirements").

Zurich only arrives at the $6 million figure and the argument that XL is required to provide primary insurance to a limit of $2.5 million by conflating primary and excess insurance and disrespecting the integrity of the three different insurance policies.  The HBI Subcontract requires HBI only to acquire "umbrella/excess coverage . . .  sufficient to provide a total of $5,000,000 per occurrence/aggregate."  *Id.* ¶ B.4.  It does not require HBI to acquire a primary policy in the amount of $6 million or a combination of policies that totals $6 million.  HBI satisfied its obligation under Paragraph B.4 by adding D.A. Collins and the City as additional insureds under the XL Excess Policy.  Dkt. No. 21-4.

Zurich's argument would conflate HBI's primary and excess policies, imposing on HBI an obligation it did not assume towards the insured and sticking XL with limits of primary coverage it did not agree to provide.  It would read Paragraph B.2 to provide that HBI would acquire insurance in an amount of $6 million per occurrence.  If the parties had intended that result, there would have been no need to set out in the HBI Subcontract that the limits on primary coverage were $1 million per occurrence.  The parties could have simply eliminated that first sentence and stated that HBI was required to obtain a Commercial General Insurance Policy in the amount of $6 million.  *See, e.g.*, *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("[T]he contract 'should be construed so as to give full meaning and effect to all of its provisions'" and "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003))); *Chachkes v. David*, 2021 WL 101130, at *7 (S.D.N.Y. Jan. 12, 2021) ("[T]he court

must, where possible, avoid an interpretation that renders language surplusage.").  In so arguing, moreover, Zurich would have XL assume coverage it did not agree to provide.  It sold HBI additional insured insurance limited to what was "required by the contract or agreement" or "required . . . in the written contract or written agreement" and presumably was paid for that portion of HBI's primary insurance.  It was not paid to assume the portion of the insurance tower from $1 million to $3 million[3] at which point the XL excess coverage would kick in.  Zurich has the tower from $1 million to $3 million.

Zurich does not dispute that language like that of the "Limits" Clause, which it relied on throughout its summary judgment briefing and rejects for the first time upon motion for reconsideration, supports "a reasonable argument that [XL's] primary policy is limited to $1 million."  Dkt. No. 47 at 2.  Instead, Zurich would read the "Most We Will Pay" Clause to impose different and greater limits on XL and to support its argument that XL's limits under the Primary Policy are $2.5 million.  Zurich would read the "Limits" Clause only to set a cap on both how much insurance coverage is available on each of the primary and excess policies and the "Most We Will Pay" Clause to set the cap on the *total aggregate* amount of insurance XL agreed to provide combining both primary and excess insurance.  Zurich suggests that the proper interpretation of this clause entails looking at the limits in the subcontract ($1,000,000 in primary coverage and $5,000,000 in excess coverage); adding those together to arrive at a total cap on in insurance coverage by XL ($6,000,000); and then reapportioning that total number to allow for the full amount of primary insurance coverage under the XL Primary Policy ($2,500,000), even

---

[3] The Zurich Primary Policy, which is primary to the XL Excess Policy, provides a $2 million limit.  Dkt. No. 25-9; Dkt. No. 28 ¶ 43.

though that is greater than the amount of primary insurance coverage in the subcontract, and apportioning the remainder of the total amount ($3,500,000), to excess insurance coverage.

These mathematical contortions are unsupported by the language of either the "Limits" Clause or the "Most We Will Pay" Clause, and the semantic difference between these clauses cannot support the weight that Zurich attempts to place on it. The "Limits" Clause and the "Most We Will Pay" Clause are each in endorsements to the XL Primary Policy. They set forth the limits with respect to that policy and must be read to be in harmony, "to avoid an inconsistency," and not to needlessly create conflict. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439 (2d Cir. 1995) (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)). The two provisions can be easily reconciled. "The most we will pay" and "We will not provide limits of insurance that exceed" both mean the same thing: primary insurance available to an additional insured who is required to be insured under the XL Primary Policy will be capped at the lesser of the amount provided in the XL Primary Policy and the amount provided in the relevant agreement requiring HBI to obtain insurance for an additional insured. The "Most We Will Pay" Clause must be read as part of the policy of which it is a part. Like the "Limits" Clause, it limits the amount that XL will pay under the Primary Policy to the amount of primary insurance HBI was required to obtain under the Subcontract.

Zurich argues that this Court differentiated between these precise phrases in *Charter Oak*. Dkt. No. 47 at 2-3. But this argument relies on a misreading of *Charter Oak*, which grouped these two phrases and the phrase "the insurance will not be greater" in the same category, as all limiting *amounts* of coverage, in contrast to the "Broader" language, which limits *scope* of coverage:

> The Zurich Policy states, "[T]he insurance afforded to [ASB] will not be broader than that which [Slade is] required by the contract or agreement to provide for [an]

additional insured."  The ordinary understanding of the term "broader" relates to the scope of the coverage—how narrow or broad it is —and not to the amount of coverage or the policy limits.  The Zurich Policy does not say that "the limit will not be higher than" nor that "the insurance will not be greater"—either of which might suggest a reference to the maximum dollar amount of coverage.  In fact, where the Zurich Policy does discuss limits in Section III, it caps its coverage by saying "the *most* [Zurich] will pay."

*Charter Oak Fire Ins. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 325 (S.D.N.Y. 2020) (internal citations omitted).

Zurich's argument that the "Most We Will Pay" Clause just sets a cap on the *total* amount of insurance XL will pay, encompassing both primary and excess insurance, ignores entirely the distinction between XL in its capacity as primary insurance provider and XL its capacity as excess insurance provider—a distinction that Zurich itself emphasized in its summary judgment briefing.  *See* Dkt. No. 31 at 16.  "The most *we* will pay," in context of the XL Primary Policy, refers to the most XL will pay *in its capacity as primary insurance provider under the Primary Policy*, not the most XL, the company, will pay in any capacity under any agreement.  Zurich's argument seeks to conflate the XL Primary Policy and XL Excess Policy and reapportion the $6 million dollars in total coverage by XL among those two policies to its benefit, rather than as apportioned under the HBI Subcontract.  This reading would create an end-run around the carefully constructed tower of primary and excess insurance policies applicable here.  Rather, the appropriate reading is that this provision of the XL Primary Policy dictates that the most XL—as a primary insurance provider under this policy—will pay is the amount of primary insurance required by the HBI Subcontract, which is $1 million.  This reading, unlike that advanced by Zurich, respects the integrity and structure of the separate insurance contracts and the hierarchy between them.

II.     **XL's Excess Policy Is Not Primary to Zurich's Primary Policy**

Zurich's second argument, that the Court erred in holding that XL's Excess Policy is not primary to Zurich's Primary Policy, is unpersuasive.  Zurich reiterates here the identical arguments it made in its summary judgment briefing.  This Court has already rejected Zurich's proffered interpretation of the XL Excess Policy:

> As a general matter under New York law, an excess policy is not triggered until all primary policies have been exhausted.  *See Home Ins. Co. Inc. v. Liberty Mut. Ins. Co.*, 678 F. Supp. 1066, 1069 (S.D.N.Y. 1988).  That is true even if the primary policy contains an "other insurance" clause.  In order to preserve the hierarchy among tiers of insurance, New York courts "construe such a clause in a policy otherwise providing primary coverage as addressed to insurance on the same level, not to higher levels of insurance, in order to avoid 'distort[ing] the meaning of the terms of the policies involved.'"  *Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459, 467 (1st Dep't 2008) (quoting *State Farm Fire & Cas. Co. v. LiMauro*, 482 N.E.2d 13, 17 (N.Y. 1985)).  At the same time, however, New York permits the parties to contract around the general rule when "the policy's own terms plainly provide for a different result."  *Id.* at 462.

> Plaintiffs argue that the parties did contract around the general rule through the primary insurance clause endorsement in the XL Excess Policy.  The endorsement provides: "It is agreed that to the extent that insurance is afforded to any Additional Insured under this policy, this insurance shall apply as primary and not contributing with any insurance carried by such Additional Insured, as required by: (a) specifically required by written contract or agreement; (b) required to meet the obligations of a contract or agreement."  Dkt. No. 21-4 at 31.  Plaintiffs argue that under this endorsement, XL must provide primary, non-contributory insurance to an additional insured when required by a written contract.  They claim that because Addendum 4 to the HBI Subcontract requires the City to be named as "Additional Insured on a Primary and Non-Contributory basis including ongoing and completed operations," Dkt. No. 25-6 at 32, the XL Excess Policy provides primary, non-contributory coverage to the City, which makes the XL Excess Policy primary to the Zurich Primary Policy.

> The primary insurance clause endorsement in the XL Excess Policy also provides, however, that the excess coverage will be primary only after the XL Excess Policy is triggered in the first place.  That is the meaning of the language in the XL Primary Policy of "insurance is afforded to any Additional Insured under *this policy*."  Dkt. No. 21-4 at 31 (emphasis added).  If the XL Excess Policy is not triggered there would be no insurance afforded to an additional insured under the policy.  In other words, the XL Excess Policy is primary only once it is triggered, once all other primary policies have been exhausted.  The primary insurance clause endorsement does not make the XL Excess Policy primary to the Zurich Primary Policy.

*Zurich Am. Ins. Co.*, 2021 WL 2856521, at \*20-21.  Zurich's arguments here amount to nothing more than the "second bite at the apple" that a motion for reconsideration does not encompass. *Tonga Partners*, 684 F.3d at 52 ("[A motion for reconsideration is not a] "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" (quoting *Sequa Corp.*, 156 F.3d at 144)).

## CONCLUSION

The motion for reconsideration is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 46.


SO ORDERED.

Dated: August 16, 2021
       New York, New York                    _____
                                                      LEWIS J. LIMAN
                                                United States District Judge