UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
ZURICH AMERICAN INSURANCE :
COMPANY and AMERICAN GUARANTEE :
& LIABILITY INSURANCE COMPANY, : 20-cv-04614 (LJL)
:
        Plaintiffs, : MEMORANDUM AND
: ORDER
    -v- :
:
XL INSURANCE AMERICA, INC., :
        Defendant-Counterclaimant, :
    -v- :
:
ZURICH AMERICAN INSURANCE :
COMPANY, AMERICAN GUARANTEE & :
LIABILITY INSURANCE COMPANY, and :
U.S. SPECIALTY INSURANCE :
COMPANY, :
        Counterclaim-Defendants. :
:
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Zurich American Insurance Company and American Guarantee & Liability Insurance Company ("Zurich" or "Plaintiffs") move, pursuant to Federal Rule of Civil Procedure 56, for an Order granting partial summary judgment and declaring that the defense costs incurred on behalf of Hayward Baker, Inc. ("HBI") do not erode the $1,000,000 policy limit available to the additional insureds under the XL Primary Policy. Dkt. No. 82.

For the following reasons, the motion for partial summary judgment is granted in part and denied in part.

**BACKGROUND**

The Court assumes familiarity with the facts described in the prior Opinion and Orders granting in part and denying in part the parties' cross-motions for summary judgment. Dkt. Nos.

44, 50. The following facts are drawn from the parties' statements of material facts submitted pursuant to Local Rule 56.1 and the materials submitted in connection with the motion. Dkt. Nos. 85, 91. The facts are undisputed unless otherwise indicated. The record is construed in favor of the nonmoving party. The Court recounts only those facts relevant to the disposition of this motion.

This declaratory action arises out of a personal injury captioned *David Geoff Stewart et al. v. City of Port Jervis*, filed in the Supreme Court of New York, Orange County ("State Court Action"). Dkt. No. 85 ¶ 1; Dkt. No. 91 ¶ 1. In the State Court Action, David Geoff Stewart ("Claimant") alleges that he sustained injuries after a micropile struck him while he was employed by D.A. Collins Construction Company ("D.A. Collins"). Dkt. No. 85 ¶ 2; Dkt. No. 91 ¶ 2. D.A. Collins was under contract with the City of Port Jervis to operate as the general contractor for a construction project ("Project"), and in that capacity, entered into a subcontract agreement with HBI on September 17, 2018 ("HBI Subcontract Agreement"). Dkt. No. 85 ¶¶ 2–4; Dkt. No. 91 ¶¶ 2–4. The HBI Subcontract Agreement contained a provision entitled "Insurance Requirements," which sets forth parameters for the insurance policy that HBI would be required to obtain in connection with the Project. Dkt. No. 85 ¶¶ 6–7; Dkt. No. 91 ¶¶ 6–7. The provision mandated that commercial general liability insurance coverage "be written on an ISO occurrence form (ISO Form CG 00 01 12 07 or a policy form providing equivalent coverage) in an amount of $1,000,000.00 per occurrence and $2,000,000.00 aggregate." Dkt. No. 21-2 at 22. The HBI Subcontract Agreement also contained a provision entitled "Conditions Applicable to Insurance," which stated that, "[a]ll policies of insurance required by [the HBI Subcontract] must meet the following requirements":

> 4. **Additional Insureds.** All insurance policies required by these specifications . . . shall be endorsed to provide coverage to D.A. Collins Construction Co., Inc. and

all other entities listed in **Addendum 4** with respect to any and all claims arising from [HBI]'s Work under this contract or as a result of [HBI]'s (or Second Tier Subcontractor's) activities.  Additional Insured Endorsements to be Primary and Non-Contributory ISO forms CG 20 10 11 85 or CG 20 10 04 13 AND CG 20 37 04 13 or the Equivalent.[1]

*Id.* at 20.  The "Insurance Requirements" section also contains requirements regarding additional insureds, and states that the "types of insurance and . . . policy limits shall be as follows unless Addendum 4 contains additional types of insurance and/or higher limits" and "[t]he more onerous requirements apply" before continuing:

> 2. b. **Additional Insureds. All insurance policies required by these specifications** . . . shall be endorsed to provide coverage to D. A. Collins Construction Co., Inc. and all other entities listed in **Addendum 4** with respect to any and all claims arising from [HBI]'s Work under this contract or as a result of [HBI]'s (or second tier subcontractors) activities. Additional Insured Endorsements to be Primary and Non-Contributory using ISO forms CG 20 10 11 85, CG 20 10 04 13 AND CG 20 37 04 13 or the Equivalent.[2]

*Id.* at 22.  Finally, the HBI Subcontract requires that "[a]ll insurance policies . . . shall provide that the required coverage shall be primary as to any other insurance that may be available to [D.A. Collins] for any claim arising from [HBI]'s Work under this Agreement, or as a result of [HBI]'s activities." *Id.* at 20.

HBI, through its parent company Keller, obtained commercial general liability insurance from XL Insurance America, Inc. ("XL Primary Policy"), with a limit of liability of $2,500,000 per occurrence and in the aggregate, subject to a $650,000 deductible, and which limit is reduced by defense costs.  Dkt. No. 85 ¶¶ 8–9; Dkt. No. 91 ¶¶ 8–9; Dkt. No. 21-3.  HBI is a named insured on the policy.  Dkt. No. 21-3.  The policy includes a provision entitled "Separation of Insureds,"

---

[1] The HBI Subcontract Agreement lists out ''CG 20 10 11 85 or 20 38 04 13 AND CG 20 37 07 04 or the Equivalent,'' but crosses out ''CG 20 38 04 13'' and replaces it with ''CG 20 10 04 13'' and crosses out ''CG 20 37 07 04'' and replaces it with ''CG 20 37 04 13.'' Dkt. No. 21-2 at 20.
[2] The same ISO forms are crossed out and replaced here.  *See supra* note 1.

which states:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a.   As is each Named Insured were the only Named Insured; and
>
> b.   Separately to each insured against whom claim is made or "suit" is brought.

*Id.* at ECF p. 34 ("Separation of Insureds Clause").

The XL Primary Policy also contains several additional insured endorsement forms adding additional insureds to the policy, including several forms titled CG 20 10 04 13, which address liability "caused, in whole or in part," by HBI and its ongoing operations. *Id.* The form contains two provisions that are relevant to the question whether the $1,000,000 cap is eroded by HBI's defense costs. First, the "Limits" Clause states that:

> We will not provide Limits of Insurance to any additional insured person or organization that exceeds the lower of:
>
> (a)   The Limits of Insurance provided to you in this policy;
>
> (b)   The Limits of Insurance you are required to provide in the written contract or written agreement.

*See, e.g., id.* at ECF p. 99 ("Limits Clause"). The Limits Clause appears in the endorsement at pages 99 and 100 of the XL Primary Policy, but not the endorsement at pages 63 and 64. Second, the "Most We Will Pay" Clause states that:

> If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:
>
> 1. Required by the contract or agreement; or
>
> 2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

*See, e.g., id.* at ECF p. 99 ("Most We Will Pay Clause"). The Most We Will Pay Clause appears in both the endorsement at pages 63 and 64 and the endorsement at 99 and 100.

In July 2020, Zurich filed the instant declaratory judgment action against XL, seeking a judgment that the City of Port Jervis was an additional insured under the XL Primary Policy, and that XL therefore had a duty to defend and indemnify the City of Port Jervis on a primary, non-contributory basis. Dkt. No. 85 ¶ 13; Dkt. No. 91 ¶ 13. On July 7, 2021, the Court granted in part and denied in part Zurich's motion for summary judgment, holding that XL has a duty to defend the City of Port Jervis on a primary, non-contributory basis. *Zurich Am. Ins. v. XL Ins. Am.*, 547 F. Supp. 3d 381, 393 (S.D.N.Y. 2021). The Court further held that the coverage available to the City of Port Jervis under the XL Primary Policy was, pursuant to the terms of the HBI Subcontract Agreement and the XL Primary Policy, limited to $1,000,000. *Id.* at 406. Zurich filed a motion for reconsideration, and in August 2021, the Court affirmed its ruling that the coverage available to the City of Port Jervis under the XL Primary Policy was limited to $1,000,000. *Zurich Am. Ins. v. XL Ins. Am.*, 556 F. Supp. 3d 301, 305 (S.D.N.Y. 2021).

On March 23, 2023, XL offered to defend D.A. Collins and Clough Harbor & Associates ("Clough Harbor") as additional insureds in the state court action, and to reimburse past defense costs, subject to a reservation of rights. Dkt. No. 85 ¶ 19; Dkt. No. 91 ¶ 19. On May 2, 2023, Zurich accepted XL's offer to defend D.A. Collins and Clough Harbor and to reimburse their past defense costs, and requested that XL identify the costs and expenses that have eroded the XL Primary Policy. Dkt. No. 85 ¶ 20; Dkt. No. 91 ¶ 20. On May 9, 2023, XL responded to the request and provided the following breakdown of costs and expenses that have eroded the coverage available under the XL Primary Policy:

| Insured | Total Spent on Defense Costs as of 2/1/2023 | | Total Spent on Defense Costs as of 4/27/2023 | |
|---|---|---|---|---|
| Clough Harbor Associates | | $12,300.00 | | $115,919.10 |
| City of Port Jervis | Paid | $160,859.31 | Paid | $164,766.93 |
| | Invoiced | $122,925.88 | Invoiced | $122,925.88 |
| Hayward Baker Inc. | | $303,858.00 | | $505,136.21 |
| **Total Spent** | | **$599,943.19** | | **$908,748.12** |
| *Remaining Limit* | | *$400,056.81* | | *$91,251.88* |

Dkt. No. 85 ¶ 21; Dkt. No. 91 ¶ 21.

The computation of the Remaining Limit thus presumed that the defense costs spent on HBI reduced the limit of the policy available to the additional insureds. Zurich responded to this breakdown on May 24, 2023, stating its view that only the costs incurred on behalf of the additional insureds, Clough Harbor Associates and City of Port Jervis, should count towards the $1,000,000 limit of liability available under the XL Primary Policy pursuant to the Court's prior rulings. Dkt. No. 85 ¶ 22; Dkt. No. 91 ¶ 22. As such, Zurich believed there to be approximately $596,388.09 still available for its reimbursement, representing the $1,000,000 limit of liability less the $403,611.91 already paid or invoiced for Clough Harbor Associates and the City of Port Jervis as of the breakdown provided by XL. Dkt. No. 85 ¶ 22; Dkt. No. 91 ¶ 22. In response, XL reiterated its view that costs incurred on behalf of the named insured, HBI, should count towards the $1,000,000 limit of liability that it argued applied to all insureds under the Court's rulings, and that as such, only $91,251.88 remained available for reimbursement. Dkt. No. 85 ¶ 24; Dkt. No. 91 ¶ 24.

On July 17, 2023, Zurich filed the instant motion for partial summary judgment to resolve the question of whether costs incurred defending HBI erode the $1,000,000 limit of liability imposed by this Court's prior Orders, the HBI Subcontract Agreement, and the XL Primary Policy.

Dkt. No. 82.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To determine whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001). The movant bears the burden of demonstrating that "no genuine issue of material facts exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgement." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see*

*also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The non-moving party must also demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegation in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).

The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented.  Any party moving for summary judgement must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. Local Rule 56.1(a).  Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* 56.1(b).  All statements in Local Rule 56.1 submission "must be followed by citation to evidence which would be admissible." *Id.* 56.1(d).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." *Id.* 56.1(c).

## DISCUSSION

Before the Court is the question whether costs incurred defending the named insured HBI count towards the $1,000,000 limit of liability imposed on the additional insureds of the XL

Primary Policy by this Court's prior Orders, the HBI Subcontract Agreement, and the XL Primary Policy itself. Dkt. No. 82. The question arises in an unusual circumstance. The limits of liability available to the named insured exceed the limits of liability available to the additional insureds. Thus, even after the limit available to the additional insureds is exhausted, $1.5 million will be available to the named insured.

Zurich argues that the defense costs incurred on behalf of HBI do not erode the $1,000,000 policy limit available to additional insureds under the XL Primary Policy. Dkt. No 83. Zurich first suggests that the XL Primary Policy does not speak unambiguously to the question at issue. *Id.* at 5. Zurich contends that the Court should therefore rely on the Court of Appeals' decision in in *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 47 N.E.3d 458 (N.Y. 2016), to construe the Policy in a light more favorable to the insureds—*i.e.*, that HBI's defense costs do not erode the additional insured limit of liability. Dkt. No. 83 at 5–6. Zurich further argues that under New York law, with respect to the insurer's broad duty to defend, additional insureds enjoy the same litigation insurance protection as the name insured, absent unambiguous contract language to the contrary. *Id.* at 5. To do so, it relies on the holdings in *Pecker Iron Works of N.Y. v. Traveler's Ins. Co.*, 786 N.E.2d 863 (N.Y. 2003) ("'Additional insured' is a recognized term in insurance contracts, . . . [and]enjoy[s] the same protection as the named insured.") (citation omitted) ; *233 E. 17th St., LLC v. L.G.B. Dev., Inc.*, 913 N.Y.S. 2d 110, 112 (2d Dep't 2010) ("Each individual additional insured must be treated as if it had a separate policy of its own with the insurer."); *BP A.C. Corp. v. One Beacon Ins. Grp.*, 821 N.Y.S.2d 1, 2(1st Dep't 2006) *aff'd in part and modified in part* 871 N.E.2d 1128 (N.Y. 2007). In not following "these settled rules" by not providing its additional insureds with the same litigation protection as HBI, XL treats the additional insureds "far worse" by using defense costs incurred on behalf of its named insured to erode the reduced

additional insured limit of liability.  Dkt. No. 83 at 5.

Further, Zurich argues that XL should have relied upon the practice of "most commercial general liability policies" and the holding in *Selective Ins. Co.*, 47 N.E.3d 458 (N.Y. 2016), to either: (1) pay defense costs outside the limits of liability or (2) have inserted an allocation provision in its policy that allocates attorneys' fees.  Dkt. No. 83 at 6–7.  Finally, Zurich relies on *Ostrowski v. Am. Safety Indem. Co.*, 2010 WL3924679, at *17 (E.D.N.Y. Sept. 30, 2010), to argue that the Separation of Insureds Clause in the XL Primary Policy requires the policy to be read as if the insured is the only insured covered by the policy and that the clause "[e]xcept with respect to the Limits of Insurance" does not impact the erosion of the distinct limit of liability that applies to the additional insureds.  Dkt. No. 83 at 7–8.

XL responds with three arguments:  (1) the Separation of Insureds Clause demonstrates the presumptively communal nature of the liability limit; (2) the HBI subcontract does not require HBI to provide its additional insureds with exclusive access to liability limits; and (3) the Court's opinions do not support Zurich's exclusivity argument.  Dkt. No. 89.

First, XL argues that the Separation of Insureds Clause "clearly" states that additional insureds are not entitled to separate or exclusive access to any portion of the Limits of Insurance.  Dkt. No. 89 at 4–5.  According to XL, given that "the Policy is clear as written," Zurich's only viable argument—that the Policy could have been drafted differently—is not relevant to this case. *Id.* at 5.  Additionally, XL relies on the holdings in *DRK, LLC v. Burlington Ins. Co.*, 905 N.Y.S.2d 58, 59–60 (1st Dep't 2010) and *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010) ("[I]f an insurance policy is clear and unambiguous, it is to be given its plain and ordinary meaning, and courts are to refrain from rewriting the agreement." (internal quotation marks omitted)).  Further, XL argues that the cases cited by Zurich are inapplicable

because they do not concern how the limits to insurance apply to multiple insureds. Dkt. No. 89 at 5.

Second, XL argues that the HBI Subcontract does not require the purchase of insurance for the exclusive use of the additional insureds; instead, the only language regarding the exclusivity of policy limits applies to benefit only HBI. *Id.* at 6. Further, XL argues that the parties specifically did not include exclusivity language with respect to the Additional Insureds, and, given that the parties knew how to draft such exclusivity language, the HBI Subcontract is the best evidence of the parties' intent with respect to coverage. *Id.* XL relies on the holdings in *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, 2012 WL 4473288, at *10 (S.D.N.Y. Aug. 16, 2012), *Travelers Prop. Cas. Co. of Am. v. Wesco Ins. Co.*, 585 F. Supp. 3d 463, 473 (S.D.N.Y. 2022), *Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 346–47 (S.D.N.Y. 2021), and *Greenfield v. Philles Records, Inc.*, 78 N.E.2d 166 (N.Y. 2002) to argue that the Subcontract does not support that Zurich's exclusivity argument. Dkt. No. 89 at 7.

Third, XL argues that there is no support from the Court's prior rulings that the Additional Insureds enjoy exclusive access to the $1,000,000 available under XL's Primary Policy and that HBI is precluded from accessing that portion of the coverage. Dkt. No. 89 at 8. According to XL, Zurich's position would nonetheless force XL to provide exclusive coverage to a subset of insureds that XL never agreed to provide. *Id.* According to XL, the $1,000,000 coverage shared between the Additional Insureds is not a "diminished amount" as alleged by Zurich; it is, instead, the "exact amount set forth in the HBI Subcontract." *Id.* In their view, the Additional Insureds are not being treated "far worse" than HBI because the Additional Insureds' defense costs also erode the limit of liability and, thus, reduce the amount HBI could otherwise recover for its own defense. *Id.* at 9. As such, Zurich's position would "impermissibly allow" the Additional Insureds to take priority

over HBI—a position not supported by any authority. *Id.*

Costs incurred on behalf of HBI do not tally toward the $1,000,000 limit of liability applicable to the additional insureds under the XL Primary Policy. This Court held in August 2021 that the primary coverage available to the additional insureds under the XL Primary Policy was limited to $1,000,000. *Zurich Am. Ins. v. XL Ins. Am.*, 556 F. Supp. 3d. 301, 305 (S.D.N.Y. 2021). The Court reached that conclusion because:

> Both the ''Limits'' Clause and the ''Most We Will Pay'' Clause limit the amount of insurance coverage to the lesser of the amount provided in the XL Primary Policy ($2,500,000) or the amount provided in the additional insured contract or agreement. Here, that lesser amount provided in an additional insured contract or agreement is $1,000,000, the figure referenced in the Court's opinion. The HBI Subcontract explicitly limits HBI's obligation to obtaining Commercial General Liability Insurance coverage in an amount of $1,000,000 per occurrence and $2,000,000 aggregate on an ISO occurrence form.

*Id.* at 307. Further, the Limits Clause and the Most We Will Pay Clause explicitly limit their own applicability to additional insureds; the Limits Clause states that XL "will not provide Limits of Insurance *to any additional insured person or organization* that exceeds . . . ," Dkt. No 21-3 at 99 (emphasis added), while the Most We Will Pay Clause states that "[i]f coverage provided to the additional insured is required by a contract or agreement, *the most [XL] will pay on behalf of the additional insured is . . .* ," *id.* at 100 (emphasis added). The coverage caps that apply by way of the Limits Clause and the Most We Will Pay Clause apply only, by their own words, to additional insureds. HBI is a named insured. It is not an additional insured. The additional insureds thus have a contractual right to insurance up to the $1,000,000 limit of liability. Although in the future it may be that defense costs incurred by HBI will, as a practical matter, *erode* the amount of coverage available to the additional insureds (if, for example, HBI's defense costs exceed $1,500,000 and thus invade the coverage available to the additional insureds), the Court need not address that scenario now. The HBI defense costs do not currently approach the $1,500,000

million excess to the $1,000,000 million additional insured protection purchased by HBI on behalf of its additional insureds. The additional insureds have a contractual right to up to $1,000,000 in coverage and will be able to enjoy that full amount of coverage unless and until any HBI defense costs exhaust not only the $1,500,000 but portions of the $1,000,000 in coverage at the bottom of the insurance stack.

The Separation of Insureds Clause does not, as XL argues, require that the XL Primary Policy be read such that defense costs incurred on behalf of HBI count toward the $1,000,000 limit of liability imposed on the additional insureds by the Limits Clause and the Most We Will Pay Clause. *See* Dkt. No. 89 at 4–5. The function of a Separation of Insureds Clause is "primarily [to] highlight[] the named insured's separate rights and duties . . . ." *DRK, LLC v. Burlington Ins. Co.*, 905 N.Y.S.2d 58, 60–61 (1st Dep't 2010). The function of the proviso that begins the Separation of Insureds Clause—"[e]xcept with respect to the Limits of Insurance"—is to ensure that the remainder of the clause does not create duplicative coverage limits that are separately available to each named insured. Dkt. No. 21-3 at 34. Put differently, the proviso preserves the notion that use of coverage by one insured may operate to reduce the coverage available to the other insureds, and that in that sense, the insureds may not be separate. *See DRK, LLC*, 905 N.Y.S.2d at 59–60 ("The Separation of Insureds provision . . . makes clear that the limits of the policy are to be shared by all of the insureds, i.e., that they are not each able to exhaust the limits of coverage but must share that limit equally."). But defense costs incurred on behalf of HBI do not count towards the distinct and additional coverage limit of $1,000,000 applied to the additional insureds by way of the Limits Clause and the Most We Will Pay Clause.

Accordingly, XL's further argument that Zurich's interpretation of the XL Primary Policy would create an "exclusive" bucket of coverage available only to the additional insureds is

without merit. Dkt. No. 89 at 8. The $1,000,000 limit imposed by the Limits Clause and the Most We Will Pay Clause acts as a maximum, but not a minimum, of coverage available to the additional insureds; the coverage available to the additional insureds may be eroded below $1,000,000.[3]

## CONCLUSION

Zurich's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Defense costs incurred on behalf of HBI do not count towards the $1,000,000 limitation of liability applicable to the additional insureds under the XL Primary Policy. Defense costs incurred on behalf of HBI may erode the coverage available to the additional insureds if defense costs incurred on behalf of HBI exceed $1,500,000 before the $2,500,000 of coverage available under the XL Primary Policy is exhausted.

The Clerk of Court is respectfully directed to close Dkt. No. 82.

SO ORDERED.

Dated: November 13, 2023
       New York, New York

_____
                    LEWIS J. LIMAN
                    United States District Judge

---

[3] To the contrary, it is XL's argument that would create an unfair benefit—for XL. HBI purchased and presumably paid premiums for a $2,500,000 policy of which $1,000,000 would be available to the additional insureds. Under XL's argument, on the assumption that HBI incurred any defense costs, XL would be permitted to deprive the additional insureds of that $1,000,000 million limit of liability HBI purchased for them—without ever exposing itself to liability for any amounts in excess of $1,000,000 (much less the full $2,500,000). The first dollars out of the policy in favor of HBI would count against the $1,000,000 and the remainder in excess of $1,000,000 would be free for XL to retain—even if, as a result, the additional insureds did not receive coverage for some of their defense costs.